ARTHUR L. FAUBEL ET AL. *v.* ZONING COMMISSION OF
THE TOWN OF RIDGEFIELD ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued October 5—decided November 10, 1966

*Thomas W. Van Lenten,* for the appellant (named defendant).

*J. Harold Merrick,* for the appellees (plaintiffs).

ALCORN, J. The town of Ridgefield is zoned under the authority of what is now chapter 124 of the General Statutes. *Summ* v. *Zoning Commission,* 150 Conn. 79, 81, 186 A.2d 160. The zoning act provides for eight types of residence zones, one type each for business and light industry, and includes a provision allowing research and development laboratories, by special permit, in any part of the town. Ridgefield Zoning Regs. §§ 3-13 (1961). On July 8, 1963, a petition was presented to the defendant zoning commission, hereinafter referred to as the commission, seeking the creation of a new light industrial park zone and a rezoning of the petitioners' land from its existing residence restrictions to the proposed new zone. The petitioners' land was subject to the second highest residential restriction permitted among the eight different residence zones. § 4. Following a hearing at which there was extensive opposition, the commission, on December 19, 1963, voted to amend the zoning regulations to include the proposed light industrial park zone and to reclassify the petitioners' land to that zone. The plaintiffs own land in, adjacent to, or in the immediate vicinity of the rezoned area. They appealed to the Court of Common Pleas on the ground that the commission had, in nine particulars, acted illegally, arbitrarily, and in abuse of its discretion. The court sustained the appeal, and from that decision the commission has taken this appeal. Error is assigned in the conclusions of the court that before the property could be rezoned there must be proof either of a mistake in the original zoning or that

the character of the neighborhood had changed to such an extent that a reclassification of the property ought to be made, that the record before the commission did not support the commission's conclusion that the change was in the public interest, and that the change adopted did not contain sufficient standards to meet the requirements of the statutes, and in that the court substituted its own judgment for that of the zoning authority.

A transcribing machine used to record the hearing before the commission failed to operate properly, and the parties stipulated that a summary of oral evidence heard by the commission be substituted for the incomplete transcription. The court properly accepted the stipulated testimony as part of the record. See *Strom* v. *Planning & Zoning Commission,* 153 Conn. 339, 344, 216 A.2d 623. The court heard no additional evidence but decided the case on the record filed with it by the commission, including the stipulated oral testimony, so that no finding of facts was necessary. *Nielson* v. *Zoning Commission,* 149 Conn. 410, 414, 180 A.2d 754. The circumstances, however, warranted a limited finding setting forth the court's conclusions sufficient to present the issues concerning them which the commission desired to have reviewed. *Wagner* v. *Zoning Board of Appeals,* 153 Conn. 713, 714, 216 A.2d 182. The commission did not request and consequently the court did not make such a limited finding. The conclusions which are attacked appear only in the memorandum of decision. The parties have briefed and argued the errors assigned in these conclusions, however, and we have decided to consider the issues as the parties have treated them. *Krejpcio* v. *Zoning Board of Appeals,* 152 Conn. 657, 663, 211 A.2d 687.

The relevant provisions of the light industrial park zone, adopted by the commission as § 13A of the zoning regulations, appear in the footnote.[1] Other provisions of the new section are not material to our discussion. We observe that the amendment not only would restrict the use of property in the zone to a light industry which the zoning board of appeals considered to be not obnoxious, offensive, or a public nuisance but also would limit any approved use solely to the particular applicant, which, if the applicant was a corporation, enured to the benefit of its "successors by corporate merger, reorganization, change of name or the like." The language would purport not only to limit the use of property in the zone to an approved industry but also to afford preferential treatment in the duration of that use to a corporate applicant. In the view which we take of the case, it is unnecessary to decide any constitutional implication involved.

The petition presented to the commission was a dual one, namely, (1) to create a new zone and (2) to rezone the petitioners' property. Under normal circumstances, therefore, we would be required to

---

[1] "[Ridgefield Zoning Regs. § 13A (1966).] LIGHT INDUSTRIAL PARK ZONE A. Permitted Use: In a Light Industrial Park Zone, no buildings, structures, or premises shall be used and no buildings shall be erected, altered or used which are arranged, intended or designed to be used except for a light industrial use. 1. This use shall be any light industrial use which the Zoning Board of Appeals after public hearing held by it thereon, shall find and determine will not be obnoxious, offensive or constitute a public nuisance. After approval by the Zoning Board of Appeals with respect to any premises for a use permitted by this Section—such premises shall be devoted exclusively to the use specified in such approval, and uses accessory thereto, and such approval shall enure solely to the benefit of such applicant, and, if such applicant be a corporation, its successors by corporate merger, reorganization, change of name or the like."

test the action of the trial court in those severable aspects since, depending on the state of the record, the commission might be sustained in its creation of the new zone and overruled in its rezoning of the petitioners' property. Actually the court overruled the commission in both respects.

Although dual in nature, the petition was, in fact, both phrased and presented as a single proposition. The petition sought a change in the restrictions on the petitioners' property "to a new proposed zone" and the adoption of specific regulations "relative to the use of said property within said proposed [zone]." The entire proceeding before the commission focused on the single issue of rezoning this particular property to the specified uses. The constitutionality of § 13A was not decided by the trial court, and we do not decide it here.

After voting to create the light industrial park zone, the commission voted to rezone about 368 acres of land owned by the petitioners from its existing restrictions, which limited the use primarily to a single-family detached residence on a two-acre lot, to the exclusively industrial use provided for in the new zone. As required by General Statutes § 8-3, the commission gave reasons for this downgrading of the zoning restrictions, and they appear in the footnote.[2]

The rezoned area is bounded on the west by the

---

[2] "A. Such a zone should induce qualified light industry to locate in the Town and promote the general and economic welfare of Ridgefield in the following respects: 1. It will broaden the Town's taxbase and introduce an additional source of real estate and property tax revenues. The present light industrial zone occupies less than one-half (½%) percent of the Town's land area and comprises approximately five (5%) percent of the current Grand List. 2. It will create jobs for people within the Town whereby they will not have to travel elsewhere for employment. 3. It will increase the

New York–Connecticut state line, on the north by the town line between Danbury and Ridgefield, and on the east and south by private property zoned for residential use in the same category as that from which the petitioners' land had been removed. Ridgefield has a planning commission which has adopted a plan of development for the town pursuant to General Statutes § 8-23, properly referred to as the "master plan" as distinguished from the comprehensive plan of the zoning commission. *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 538, 209 A.2d 179. This plan, while controlling as to municipal improvements, *Purtill* v. *Town Plan & Zoning Commission,* 146 Conn. 570, 572, 153 A.2d 441, is merely advisory in its effects on the action of the zoning commission under the general law. *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822. At the hearing before the commission, no one

---

trade and business conducted in the Town by bringing about new local payrolls.

"B. The location of the Light Industrial Park Zone in the furtherest [sic] northwest corner of Ridgefield is extremely suitable and will minimize the detriment to the Town and to neighboring property owners for the following reasons: 1. Each light industrial applicant must be approved by the Zoning Board of Appeals after a public hearing and must produce plans and specifications relating to the operation. 2. A buffer strip of 500 feet west of Ridgebury Road together with a setback restriction of 200 feet from any street or property line will substantially conceal the operation from view. The minimum acreage and height requirements are also restrictive to protect surrounding property owners. 3. The entire Light Industrial Park Zone comprises 300 acres, more or less, with no residential dwellings within it; there is only open farm fields and farm land. 4. It adjoins the Town of Danbury's Light Industrial Zone on the north. 5. Interstate 84, a major state four-line highway is located approximately three-quarters (¾) of a mile north from said Zone and New York State is planning Interstate 87, which will connect to Interstate 84 to serve this area. 6. There are airport and railroad facilities in the Town of Danbury."

favored the petition except spokesmen for the petitioners. The planning commission, the Ridgebury community association, the citizens advisory committee on planning through zoning, and numerous individuals opposed the petition. Since the vote of the commission was unanimous, it was effective to adopt the zoning amendment over the planning commission's opposition. General Statutes § 8-3a.

The trial court decided that the record before the commission did not support the commission's conclusion that the change of zone was in the public interest. The commission assigned this conclusion as error. Consequently, it is the responsibility of the commission to set forth in the appendix to its brief such portions of the record returned by it to the court but not included in the printed record as it claims are adequate to support its action. Practice Book §§ 647, 716; *Nielson* v. *Zoning Commission,* 149 Conn. 410, 413, 180 A.2d 754. The evidence in the appendix to the commission's brief recites only that a new highway known as interstate route 84 connecting, among other places, Hartford with the New York throughway and Pennsylvania is anticipated to be very important for industry; that no other location in Ridgefield, from a highway point of view, would be any more favorable for industrial use than the area involved in this application; that Ridgefield is rapidly growing in population; and that the proposed rezoning would help broaden the tax base and provide jobs.

The plaintiffs have printed no appendix to their brief as they should have done. Practice Book § 719. Since the record filed with the trial court in this case included an agreed summary of testimony before the commission, however, we have examined it for such light as it would shed on the controversy.

Practice Book §§ 719, 721. Evidence offered in opposition to the petition was that, as recently as 1960, the residence restrictions on the property in question had been upgraded to its present status; that the only road servicing the proposed zone was a narrow, twisting, bumpy town road with an inadequate oiled surface, located for a mile and a half of its length in the city of Danbury; that adjoining areas in both the state of New York and the city of Danbury are zoned to permit rural residential use; that the attractiveness of the area for light industry is questionable; that soil conditions are particularly bad for the disposal of industrial waste and sewage; that there are no suitable roads, water supply or supporting facilities to serve industrial installations within a reasonable distance of the area; that large sums would be required to provide access roads and other facilities; that the proposed regulations would permit the erection of fifteen or sixteen factories capable of accommodating from 8500 to 12,000 employees, who might normally be expected to use 5700 to 8000 automobiles in driving to and from work, with consequent traffic congestion; that the proposed use is opposed by the planning commission; that it is not in keeping with the present rural and residential character of the neighborhood; and that it would cause a general decline in property values in the area.

On the evidence before it, the commission rested its decision on the broad premise that its action "should . . . promote the general and economic welfare." It is not without significance that the commission used the word "should" rather than the word "would". Its subordinate supporting reasons for its general premise amount in substance to the assertions that its action would increase real estate

and tax revenues, create local jobs, increase local payroll spending, "minimize the detriment to the Town," afford protective safeguards to adjoining properties and utilize a rural area near transportation facilities located in neighboring communities.

The zoning power must bear a rational relationship to the subjects which fall fairly within the police power and must be exercised through means which are not so unreasonable as to be arbitrary. *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. The test is whether, in the light of existing conditions, the ordinance meets the requirements of and serves the purposes stated in the statute. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112. Section 8-2 of the General Statutes, among other requirements, specifies that zoning regulations shall be designed "to promote health and the general welfare . . . and to facilitate the adequate provision for transportation, water, sewerage . . . and other public requirements." The commission concedes that the single feeder road to the rezoned area is not now adequate to accommodate industrial traffic. No provision for access roads or utilities for water, sewerage, light, power, transit or other purposes could be made in Ridgefield to meet the needs of an industrial use in the area without the approval of the town plan commission, subject only to that body being overruled by the appropriate town governing body. General Statutes § 8-24. In the light of the expressed opposition of the town plan commission to the rezoning of the area, its approval of measures to implement that rezoning cannot be assumed to be a probability. We have had occasion to consider similar situations in which the zoning authority had no control over street or highway improvements affecting zoning requirements. See *Brustein* v.

*Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523; *Luery* v. *Zoning Board,* 150 Conn. 136, 145, 187 A.2d 247; *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 326, 150 A.2d 312; *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746. As indicated by these cases, a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless, at least as in the *Luery* case, the necessary action appears to be a probability. In the absence of some reasonable assurance, which this record does not furnish, that provision can be made for the necessary transportation facilities and utilities, the commission has succeeded only in setting apart a portion of the town of Ridgefield for a use which could not be made of it.

The trial court was correct in concluding that the action of the commission did not meet the requirements of the statute. The commission has failed to show that its action was designed to promote the general welfare and to facilitate the adequate provision for transportation, water, sewerage and other public requirements. It is unnecessary to consider the other assignments of error.

There is no error.

In this opinion the other judges concurred.