[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 24, 1996
The plaintiff, Edward Zandri, appeals a decision by the defendant, Ridgefield Planning and Zoning Commission (hereinafter Commission), to grant a special permit for a child day care center on the property abutting the plaintiff's land. The property at issue is in a Residence R-5 Zone in the town of Ridgefield. The applicant, defendant Daniele Hampton, operates Hampton Heights Child Care.[1] The court has found aggrievement during a hearing on April 22, 1996.
The plaintiff argues in his brief that the defendant Commission should not have granted the special permit because the day care center was not permitted in an R-5 zone and because the Commission gave inadequate consideration, pursuant to § 312.02C, to the potential for traffic problems.
Section 407.0 of the Ridgefield Zoning Regulations (hereinafter Regulations) sets forth the uses authorized in a residence R-5 zone. The only permissible uses are "garden-type apartment building[s]" and "any use permitted in Residence R-10 or R-7.5 Zones." Regulations § 407.0A. The section does not list any special permit uses. Special permit uses are authorized by §§ 405.0B and 406.0B, which list the uses allowed in residence R-10 and R-7.5 zones. The latter two sections refer to § 401.0B, which specifies the categories of authorized special permit uses.[2] Regulations §§ 401.0B, 405.0B, 406.0B.
Specifically, the main thrust of the plaintiff's argument is that a child care center is not an educational use and that § 401.0B(1) does not authorize uses such as child day care centers, CT Page 5593 private schools, nursery schools, or similar uses in the zone.[3] Conversely, the plaintiff, in effect, urges the court to interpret "educational uses" as being limited to public elementary or high schools. (See Pl. Br., 7) ("None of the stated uses include the use applied for here . . . nor do they include private schools, nursery schools, or similar uses"). The plaintiff further argues that "by expressly providing for day care centers in the B-3 Zone there is clear intent from the regulations as a whole to exclude them in other zones, so that the words `educational . . . uses' cannot reasonably be construed to include either nursery schools or day care facilities." (Pl. Br., 8-9.) Lastly, the plaintiff challenges as unreasonable the Commission's finding that the use would meet all of the § 312.02C standards. The defendants argue acceptance of the Commission's broader interpretation of an educational use and, additionally, state that the defendant Commission properly determined that the use would be appropriate under § 312.02C.
Generally, "[a] zoning board of appeals . . . has the power to interpret the town's zoning ordinance[s] and decide whether [they] appl[y] in a given situation." (Footnote omitted.) R. Fuller, 9 Connecticut Practice-Land Use Law and Practice (1993) § 34.13. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Toffolon v.Zoning Board of Appeals, 155 Conn. 558, 560-61, 236 A.2d 96
(1967) (reviewing zoning board of appeals' interpretation of "accessory use" as used in local zoning ordinance). Where the court finds that the Commission has fairly and reasonably exercised honest judgment, the court should not casually reverse a zoning commission's decision. Lupinacci v. Planning and ZoningCommission, 153 Conn. 694, 699, 220 A.2d 274 (1966).
Although "[t]he commission may not put an interpretative gloss on regulations that are clear and unambiguous . . . General Statutes § 8-6 entrusts the commission with the function of interpreting and applying its zoning regulations . . . [Upon reviewing such an interpretation or application,] [t]he trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts . . . The plaintiffs have the burden of showing that the commission acted improperly . . . [In ruling,] [t]he trial court . . . must not substitute its judgment for that of the zoning commission . . ." (Citations omitted.) Baron v.CT Page 5594Planning Zoning Commission, 22 Conn. App. 255, 256-57,576 A.2d 589 (1990).
The court is not bound by the defendant Commission's interpretation of a zoning ordinance, however, courts, "[i]n construing statutes . . . accord great deference to the construction given the statute by the agency charged with its enforcement." Corey v. Avco-Lycoming Division, 163 Conn. 309,326, 307 A.2d 155 (1972), citing Griggs v. Duke Power Co.,401 U.S. 424, 433, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).
"A statute should be construed so as to have meaning, so that the statute makes common sense, and so that there are no bizarre results." Knapp v. Inland Wetlands Commission, 7 Conn. App. 283,285, 508 A.2d 804, cert. denied, 200 Conn. 807, 512 A.2d 230
(1986). The court's starting point when reviewing a statute "must be the language employed by the legislature." Verdon v.Transamerica Ins. Co., 187 Conn. 363, 366, 446 A.2d 3 (1982). "If that language is plain and unambiguous, [the court need] go no further . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, [the court] will seek guidance from `extrinsic aids.'" (Citations omitted.) Sanzone v. Board of Police Commissioners, 219 Conn. 179,187, 592 A.2d 912 (1991).
In the present case, the court begins by considering the plain meaning of the word "educational." The defendant Commission has previously interpreted the word "educational" to include child care facilities (Return of Record [ROR], Ex. EE, pp. 71-72, Tr. of 7/11/95 hearing; Ex. LL p. 170, Report of Planning Director dated 6/19/95.) While the word may be a general descriptive term, reference to basic linguistic guides, such as Webster's Third New International Dictionary and Black's Law Dictionary demonstrates that the meaning of "educational" as used in the ordinance is unambiguous. See Zoning Commission v.Fairfield Resources Management Inc., 41 Conn. App. 89, 111 (1996) (relying in part on definitions from Webster's Third New International Dictionary and Black's Law Dictionary). Webster's defines "educational" as "serving to further education." Webster's Third New International Dictionary (1968). "Education" is in turn defined as "the act or process of rearing or bringing up" or "the act or process of providing with knowledge, skill, competence, or usu[ally] desirable qualities of behavior or character . . ." Id. Black's defines "education" as "comprehend[ing] not merely the instruction received at school or CT Page 5595 college, but the whole course of training: moral, religious, vocational, intellectual and physical . . . Acquisition of all knowledge tending to train and develop the individual." Black's Law Dictionary (6th Ed. 1990). These definitions make sense in the context of the zoning regulations and do not produce any bizarre results. Significantly, neither the definitions nor the context in which the words are used in the Regulations suggest a reason for the court to go beyond the plain meanings of the words in the regulation.
The plaintiff also argues that a 1992 amendment to the Regulations that adding day care centers to the specially permitted uses in the B-3 Zone, § 413.0B(5), indicates that such a use is not permitted in the R-5 Zone. As stated in the plaintiff's brief, "by expressly providing for day care centers in the B-3 Zone there is clear intent from the regulations as a whole to exclude them in other zones . . ." (Pl. Br., 8.) The amendment, however, expresses no intention to repeal pre-existing provisions authorizing day care centers in other zones, such as the educational use provision in the R-5 Zone. Instead, the amendment was intended to expand the number of zones in which day care centers were authorized.
The court continues its analysis by next determining whether the defendant Commission's decision was supported by the evidence. Baron v. Planning Zoning Commission, supra,22 Conn. App. 256-57. The evidence and testimony presented at the hearing showed that the proposed child care center will include a pre-school, the defendant Hampton has experience in teaching, and the program has a number of components designed to educate the children attending the center. (ROR Ex., AAA pp. 226-27, Tr. of 7/18/95 public hearing.) Even the plaintiff's counsel conceded during oral argument "I assume, probably, the children learn something there." (Tr., 10.) In the light of the evidence before the Commission, it was reasonable for the Commission to find that the proposed use of the property met the definition of an educational use in accordance with the Commission's previous interpretations of the ordinance and as defined above.
Finally, the plaintiff appeals on the ground that "the traffic problem, a material consideration under the standards . . . in § 312.02C of the zoning regulations, was not adequately addressed by the Commission." (Footnote omitted.) (Pl. Br., 4.) Sections 312.02C of the Zoning Regulations require the defendant to consider traffic conditions and public safety CT Page 5596 among the other general considerations set forth in the section. The transcript reflects that the Commission had several discussions about traffic-related concerns. (See, e.g., ROR, Ex. AAA, pp. 222-24, 228-42.) The evidence in the record indicates that the Commission attempted to address traffic concerns by requiring, as conditions of approval, that the applicant prohibit left turns when exciting the property; that enrollment be limited to twenty students; and that there be a minimum of four off-street parking spots. (ROR, Ex. JJJ, p. 283, Adopted Resolution of Approval dated 7/25/95.) The defendant could reasonably conclude from the evidence in the record that these conditions would constitute adequate protection and amelioration of any traffic or safety problems and would meet the requirements of the Zoning Regulations.
Accordingly, the plaintiff's appeal is, hereby, dismissed.
MIHALAKOS, J.