CURTIS MORIKAWA ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF WESTON ET AL.
(AC 31175)

DiPentima, C. J., and Bear and Schaller, Js.

---

[1] Part III of the final draft before publication was changed to part I of the published opinion.

Argued November 16, 2010—officially released February 8, 2011

*Mark S. Rosenblit*, for the appellants (defendant Joseph Ryan et al.).

*Patricia C. Sullivan*, for the appellant (named defendant).

*Robert A. Fuller*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant zoning board of appeals of the town of Weston (board) granted a variance to the defendant homeowners, Joseph Ryan and Lois Ryan,[1]

---

[1] Although the board is a defendant, only the Ryans petitioned this court for certification to appeal from the trial court's judgment. We therefore refer to the Ryans as the defendants throughout this opinion.

allowing the roof on their newly constructed dwelling to exceed the town's thirty-five foot building height restriction by two feet, seven inches. The plaintiffs, Curtis Morikawa and Diane Lynch, owners of an adjoining property, appealed from the board's decision, and the trial court sustained their appeal. On appeal to this court, the defendants claim that the court improperly sustained the plaintiffs' appeal because (1) the defendants' hardship was not self-created and (2) the board has the authority to grant a variance without proof of exceptional difficulty or unusual hardship if the board determines the violation of the zoning regulations is de minimis. We affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the court in its memorandum of decision and as supported by the record, are relevant. The defendants are owners of realty in Weston and the plaintiffs are owners of abutting land. The defendants' property is located in a district that permits only single-family homes. Section 321.7 of the town of Weston's zoning regulations provides that, in that district, "[n]o building or structure shall be permitted to exceed a height of [thirty-five] feet." Weston Zoning Regs., art. III, § 321.7.

On June 3, 2005, the defendants applied to the building inspector for a permit to construct a single-family home and filed architectural plans and drawings with the inspector. In order to act on this permit, the building inspector was obliged to submit the defendants' materials to the code enforcement officer, who, if the plans were in compliance with the zoning code, would issue a zoning permit. Pursuant to the regulations, the code enforcement officer's review process takes place before construction can commence and, after construction is completed, the code enforcement officer reviews the building and issues a zoning compliance certificate.

After reviewing the defendants' plans and drawings, the code enforcement officer found that the highest

roof height of the defendants' proposed dwelling was thirty-eight feet and was, thus, in excess of the roof height restriction. The code enforcement officer brought this problem to the attention of the defendants and the architect who prepared the specifications, with instructions to correct the defect before a zoning permit might issue. The defendants thereafter revised their plans and filed a second revised plan with the building inspector. This new plan shows the highest roof height of the building to be constructed as thirty-five feet. On the basis of the revised plan, the code enforcement officer issued a zoning permit authorizing the issuance of a building permit by the building inspector. The building inspector issued a building permit, and construction of the home on the defendants' property commenced. The roof subsequently was finished.

Thereafter, while the code enforcement officer was at the defendants' property investigating an unrelated complaint, he found that the height of the highest roof at the residence (then undergoing final site work) exceeded thirty-five feet in height. It measured thirty-seven feet, seven inches high. The code enforcement officer issued a cease and desist order to the defendants, requiring them to "remove the height violation and bring the structure into compliance."

The defendants appealed from the cease and desist order to the board. The board held a public hearing on the defendants' appeal. Joseph Ryan asked that the cease and desist order be lifted and a variance granted because no one—not the former general contractor, the former architect, the present general contractor, the framer or the town—caught the error or checked the height of the roof during the course of the construction. The roof had been completed for four months before the error was discovered by the code enforcement officer. The code enforcement officer asked the board to uphold the cease and desist order. He argued that if a

house has been constructed that exceeds the height restriction, regardless of whether it was constructed according to the submitted plans, it is an issue "for the owner and . . . the builders to deal with. It is not the town's responsibility to step in and decide whether people are talking to their contractors."[2]

The board upheld the cease and desist order but allowed the defendants to apply for a variance. The board indicated that it was leaning toward granting a variance in its discretion because this was a hardship resulting from "a voluntary act by one other than the one whom the variance would benefit, [that is, contractor error] . . . ." (Citation omitted; internal quotation marks omitted.) After the board denied their appeal, the defendants filed an application for a "variance of roof height" with the board. The defendants raised three justifications for the variance sought: (1) the defendants relied on independent contractors, an architect and builders who did not check periodically the height of the roof against the plans during construction; (2) the code enforcement officer negligently failed to monitor the construction periodically; and (3) the excess height would not affect the surrounding areas, as the house is set back from the street and the land to the rear of the house is owned by a land trust.

The board conducted a public hearing on the defendants' application for a variance. The code enforcement officer opposed the variance on the grounds that the hardship claimed was solely economic and that, even though it was unintended, the hardship claimed was

---

[2] The court found that the problem occurred because " 'the contractor looked at the wrong plans.' " The defendants maintain that the problem occurred because, although the architect adjusted the height of the roof in the revised plans, he failed to adjust its pitch. Whether the error was caused by the architect or the contractor is not material to the outcome of this appeal. See footnote 3 of this opinion. We refer to the error as one made by the "architect and/or contractor."

self-created. The board discussed the application for the variance, noting that the roof height was out of compliance by approximately two feet, that the home is perched high on the land and is not a detriment to the neighborhood, and that the hardship was created by the contractor's error. "The conclusion of the meeting was as follows: A member stated that the variance would be based on a 'de minimis' theory. Another stated: 'And on the neighborhood setting; the siting of the house.' Another stated: 'And the topography.'" A motion was made to grant the variance, and the board members approved it unanimously.

An August 7, 2006 notice to the defendants from the clerk of the board stated the approved motion as follows: "[A] motion [was made] to grant variance to [§] 321.7 regarding maximum building height to allow the building to exist as it is presently constructed on this date of July 25, 2006. The variance to the code is de minimis as to the way the property is laid out, the siting of the house and the topography."

The plaintiffs' appeal to the Superior Court followed. After trial, the court sustained the plaintiffs' appeal on the grounds that Connecticut rejects the granting of variances for de minimis violations of zoning regulations and that neither of the other grounds stated by the board, siting or topography as they related to the roof height, constituted a hardship that related to a condition of the land initially. The board's stated collective reasons for granting the variance did not include the much discussed reason of a mistake by the architect and/or contractor. The court found that even if it concluded that the board had granted the variance on that ground, a hardship created by those employed by the owner is a self-created hardship, which cannot support the board's grant of a variance. After the defendants' motion for articulation was granted and their motion for reargument and reconsideration was denied, and

after this court granted their petition for certification to appeal, the defendants filed the present appeal.

The defendants claim that the court improperly ruled that the board abused its discretion in granting their application for a variance. Specifically, they maintain that the court improperly concluded that their hardship was self-created because they had sufficient involvement in the building process to be chargeable with the outcome. They also argue that the board has the discretionary authority to grant a variance if it determines that the violation is de minimis, which obviates the need for them to prove exceptional difficulty or unusual hardship in order to receive a variance. We are not persuaded.

"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was . . . arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court." (Internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 23–24, 966 A.2d 722 (2009).

"In order to determine whether the board properly granted the subject variance, we must first consider whether the board gave reasons for its action." (Internal quotation marks omitted.) Id., 25. "[W]hen a zoning board has given a formal, official collective statement of reasons for its actions, the scope of our review is limited to determining whether the assigned grounds

are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 294–95, 947 A.2d 944 (2008).

In the present case, the board gave a formal, collective statement of reasons for its actions. Ordinarily, we would not look beyond those reasons. On appeal before this court, the defendants do not challenge the court's ruling that two of the board's stated reasons, the siting and the topography as they pertain to the height of the roof, were insufficient to support the board's action. Rather, they challenge the court's conclusion that the board did not have the authority to grant the variance if it determined the violation to be de minimis. Additionally, the defendants had asked the trial court to determine that the board had concluded that their hardship was not self-created based on the extensive discussion of this issue, even though this ground was not included in the board's formal statement. The court, assuming arguendo that the board did so conclude, considered the issue of self-created hardship and found it to be unavailing. In response to a motion by the defendants, the court further articulated its ruling on the issue of self-created hardship. In their appeal to this court, the defendants focus their claims on whether the hardship was self-created and whether the violation was de minimis. The defendants have presented an adequate record to review these claims. Although the issue of self-created hardship was not a formal stated basis for the board's action, we will consider, as did the trial court, the merits of this claim.

The following principles of law relating to variances guide our inquiry. "A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town. . . . It is well established,

however, that the granting of a variance must be reserved for unusual or exceptional circumstances. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 24.

Our Supreme Court has cautioned that "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised. . . . [U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted. . . . The power to authorize a variance is only granted for relief in specific and exceptional instances." (Citations omitted; internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 270–71, 588 A.2d 1372 (1991); *Durkin Village Plainville, LLC* v. *Zoning Board of Appeals*, 107 Conn. App. 861, 868–69, 946 A.2d 916 (2008).

Accordingly, our Supreme Court has "interpreted [General Statutes § 8-6 (a) (3)] to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship or a hardship

that was self-created, however, is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 24–25.

As to whether a hardship is self-created, our Supreme Court has stated that "[w]here the condition which results in the hardship is due to one's own voluntary act, the zoning board is without the power to grant a variance." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 561, 916 A.2d 5 (2007). The defendants focus their claim on the corollary statement, found in several Supreme Court decisions, that where "the hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance." (Internal quotation marks omitted.) *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 295; *Vine* v. *Zoning Board of Appeals*, supra, 561; *Whittaker* v. *Zoning Board of Appeals*, 179 Conn. 650, 657–58, 427 A.2d 1346 (1980); *Belknap* v. *Zoning Board of Appeals*, 155 Conn. 380, 384, 232 A.2d 922 (1967). The defendants maintain that because the hardship was created by the error of the contractor and/or the architect, the defendants did not create the hardship. We disagree.

We begin our analysis by examining whether a hardship created by the error of the defendants' contractor and/or architect is self-created because it arises as the result of a voluntary act by one other than the one whom the variance will benefit. In *Belknap* v. *Zoning Board of Appeals*, supra, 155 Conn. 382–83, the applicants believed erroneously that their predecessor in title had conveyed to them a parcel that fully complied with zoning requirements. In fact, the lot was undersized and because no accurate maps or surveys of the

property were available and because a title search performed years before was inconclusive as to the ownership of an abutting strip of land, the original grantor conveyed only 2.94 acres, not the three acres that she believed that she owned, to the applicants' predecessor in title. Id., 382. The board denied the variance sought. Id., 383. Our Supreme Court upheld the board's decision because "the board is not required to extricate an applicant from an unusual hardship, at least if it does not arise out of the application of the zoning regulations themselves." Id., 384–85. Nonetheless, the court stated, in dicta, that a board had the authority to grant a variance "[w]here, as in the present case . . . the hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit . . . . Cf. *Highland Park, Inc.* v. *Zoning Board of Appeals*, [155 Conn. 40, 43, 229 A.2d 356 (1967)]." *Belknap* v. *Zoning Board of Appeals*, supra, 384.

In *Highland Park, Inc.* v. *Zoning Board of Appeals*, supra, 155 Conn. 40, either the surveyor or the foundation contractor employed by the plaintiff corporation made an error that caused a house to be constructed on a lot so that it was positioned in violation of the applicable zoning regulations. Id., 41–42. Without the variance, the house would have to be demolished. Id., 42. The zoning board of appeals denied a variance request, finding that the condition was " 'self-inflicted.' " Id., 43. In sustaining the trial court's dismissal of the appeal, our Supreme Court stated that "any hardship present in the situation is due to the property owner's own error, *or the error of those employed by the owner*, and does not arise from the application of the zoning regulations themselves." (Emphasis added.) Id.

Our Supreme Court indicated in the *Belknap* dicta that, although there may be situations in which the court would uphold the grant of a variance when the

hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit, it squarely held in *Highland Park, Inc.*, that it would not do so when the hardship arises as a result of the property owner's own error or the error of those employed by the owner. The latter principle is illustrated in *Pollard* v. *Zoning Board of Appeals*, 186 Conn. 32, 40–43, 438 A.2d 1186 (1982). In that case, a house was constructed too close to a property boundary due to an error by a surveyor who was hired "for the benefit of the defendants . . . ." Id., 43. Specifically, the surveyor was hired by the executrix of the estate of the deceased prior owner, but the defendants, the heirs of the prior owner, were the legal owners of the property at the time the survey was performed improperly. Id., 40–42. The court held that the hardship "arose as the result of voluntary acts *on behalf of one whom the variance would benefit* and, therefore, was self-created." (Emphasis added.) Id., 42.

Having examined the genesis of the proposition on which the defendants rely, we are persuaded that errors made by the architect and/or general contractor in the construction of the defendants' home do not constitute "a voluntary act by one *other than* the one whom the variance will benefit . . . ." (Emphasis added; internal quotation marks omitted.) *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 295. Rather, we conclude that the errors of the architect and/or general contractor that resulted in the roof exceeding the thirty-five foot height requirement are attributable to the defendants because the voluntary acts of those persons were *on behalf of* the ones whom the variance would benefit. Thus, the hardship claimed is self-created.[3]

---

[3] But see *Osborne* v. *Zoning Board of Appeals*, 41 Conn. App. 351, 354–55, 675 A.2d 917 (1996) (concluding that error made by surveyor hired by architect that resulted in house constructed within sideyard setback was not hardship created by homeowner who hired architect). In *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 562, our Supreme Court noted that "[i]n cases in which an extreme hardship has not been established, the reduction

Moreover, although we can appreciate the plight of the defendants, who relied on the work of the professionals that they hired, we have stated that "[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. . . . [T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Zoning Board of Appeals*, supra, 107 Conn. App. 869–70. Because the

of a nonconforming use to a less offensive prohibited use may constitute an independent basis for granting a variance." See also *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 708–10, 712, 535 A.2d 799 (1988). In *Osborne* v. *Zoning Board of Appeals*, supra, 352–53, the surveyor's error reduced, but did not eliminate, a prior nonconformity. In *Durkin Village Plainville, LLC* v. *Zoning Board of Appeals*, supra, 107 Conn. App. 866 n.4, this court distinguished *Osborne* on several grounds, including that the error did not reduce a prior nonconformity and that there was no evidence that the surveyor error at issue had been made by an independent contractor.

The present matter is also distinguishable from *Osborne*. As in *Durkin Village Plainville, LLC*, the error in the present case did not reduce a prior nonconformity. In *Osborne* v. *Zoning Board of Appeals*, supra, 41 Conn. App. 354, the surveyor testified before the board that he was not hired by the applicants and that he made the error. Here, the trial court determined that the error occurred because " 'the contractor looked at the wrong plans.' " The defendants maintain on appeal that the problem occurred because, although the architect adjusted the height of the roof in the revised plans, he failed to adjust its pitch. The defendants testified before the board that, in their opinion, "five entities" were responsible for the error: the former general contractor, the former architect, the present general contractor, the framer and the town. We find unavailing the defendants' claim that this case is similar to *Osborne*.

Further, in dismissing the defendants' claim that an exception under *Osborne* applies, the trial court determined that they "had an initial indication that the roof in the first plans was out of code, and they also had sufficient involvement in the building process to be chargeable with the outcome." The fact that the record in this case indicates that the defendants were directly notified of the defect by the code enforcement officer before building began presents an even more compelling reason to limit *Osborne* to its facts than did *Durkin Village Plainville, LLC*.

defendants' hardship was self-created, the board was without the authority to grant the variance sought.[4]

The defendants ask this court to recognize a "de minimis" deviation exception that would obviate the need for the homeowners to prove hardship.[5] We decline to do so. The authority of a zoning board of appeals to grant a variance is controlled by statute, and § 8-6 (a) (3) does not allow a variance unless the applicant proves that there is an "exceptional difficulty or unusual hardship . . . ." See *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 24 ("[p]roof of exceptional difficulty or unusual hardship is *absolutely necessary* as a condition precedent to the granting of a zoning variance" [emphasis added; internal quotation marks omitted]). We recognize that case law has carved out a narrow exception to this requirement. See *Vine* v.

---

[4] The defendants argue that the code enforcement officer also "participated" in the creation of the hardship because he did not discover the error sooner. In its articulation, the trial court found that the "issue of the [code enforcement officer's] role was not given by the [board] as a reason for its granting of the variance. . . . It was not argued by the [board] or the Ryans as a ground to dismiss the appeal." Indeed, the board upheld the cease and desist order issued by the code enforcement officer prior to considering the defendants' application for a variance. The record is clear that, in the revised plans reviewed by the code enforcement officer, the roof height was corrected. We are not persuaded by the defendants' claim that, because the code enforcement officer *could* have discovered that the architect failed to correct the *pitch* of the roof in the revised plans, the hardship is somehow not self-created.

We note that in making this argument, the defendants expressly disclaim reliance on the doctrine of municipal estoppel; see *Collins Group, Inc.* v. *Zoning Board of Appeals*, 78 Conn. App. 561, 575–76, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003); and we express no opinion on that issue.

[5] Insofar as the cases cited by the defendants discuss de minimis violations in the context of variances, such discussion almost invariably was relevant to whether the first of the two requirements for a variance was satisfied; that is, whether the variance did not affect substantially the comprehensive zoning plan. None of the cases cited stands for the proposition that, in Connecticut, a de minimis violation obviates the need for the homeowners to prove hardship.

*Zoning Board of Appeals*, supra, 281 Conn. 563 (showing of hardship not required when variance reduces prior nonconforming use); *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 708–10, 535 A.2d 799 (1988) (same). We decline the defendants' invitation to carve out a new exception here.

The judgment is affirmed.

In this opinion the other judges concurred.